UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORMAN J.,

      Plaintiff,

 v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

      Defendant.

CASE NO. C18-5628-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

   Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

   Plaintiff was born on XXXX, 1977.[1] He completed the ninth grade, taking special education classes, and previously worked as a building cleaner. (AR 47, 210.)

   Plaintiff protectively filed applications for SSI and Disability Insurance Benefits (DIB) on

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

January 8, 2016, alleging disability beginning January 1, 2010. (AR 174-81.) His applications were denied at the initial level and on reconsideration.

On October 18, 2017, ALJ Vadim Mozyrsky held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 32-50.) At hearing, plaintiff amended his alleged onset date to January 8, 2016 and voluntarily elected to withdraw his request for hearing as it pertained to the application for a period of disability and DIB. On January 3, 2018, the ALJ issued a decision finding plaintiff not disabled. (AR 18-27.) The ALJ dismissed the request for DIB and found plaintiff not under a disability in relation to his SSI claim.

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 5, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's learning disorder, panic disorder, agoraphobia, and substance addiction disorder severe. He found the evidence did not support a medically determinable impairment of intellectual disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform a full range of work at all exertional levels, but limited to simple, routine, repetitive tasks, simple work-related decisions, and occasional interaction with coworkers and the public. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a hand packager, stores laborer, and kitchen helper.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in evaluating medical opinions, lay evidence, and his testimony. He requests remand for an award of benefits. The Commissioner argues the ALJ's

decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.[2]

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence in the record. He found the evidence to suggest greater abilities than plaintiff alleged. (AR 23.) Plaintiff testified he did not know how to use a washer or stove, but, in October 2015, reported he could do laundry and basic cooking. (AR 286.) While evaluating psychologist Dr. Peter Weiss assessed an IQ score of 57 from the Wechsler Adult Intelligence Scale (WAIS-IV) test and diagnosed mild intellectual disability, panic disorder, and agoraphobia (AR 287), non-examining State agency psychologist Dr. Gerald Peterson found the WAIS-IV scores did not appear to be a valid measure of plaintiff's abilities given his prior earning capacity, including significant earnings of $19,614 in 1997, $24,498 in 1998, $15,559 in 2006, and $14,622 in 2007. (AR 75, 183-84.)

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

Plaintiff testified he could not read a logbook on his last job, but did not describe any other difficulties performing the work. (AR 323.) Plaintiff appeared to use language beyond the IQ scores obtained and had some recall well beyond the memory scores. (AR 75.) He had a driver's license in the past, suspended for child support issues. (AR 323.) Someone read the driver's license test to him, but he did not describe any difficulties driving. (*Id*.) The ALJ found plaintiff's history did not suggest deficits in adaptive functioning consistent with an intellectual disability.

In a consultative evaluation (CE) with Dr. Brett Valette, plaintiff was vague and evasive and gave conflicting information. (AR 23, 322-27.) His behavior was mildly nervous. He understood all directions on testing, but sometimes refused to perform or quit part way through. He got angry and stopped some subtests. The test results were not considered valid, as plaintiff gave up easily and refused some testing. Dr. Valette diagnosed generalized anxiety disorder and gave a provisional diagnosis of learning disorder, but did not provide a functional assessment due to plaintiff's conflicting information, vague and evasive responses, and lack of cooperation.

In a September 2016 mental health intake assessment, plaintiff presented with logical and linear, but simplistic thought process. (AR 23, 344-56.) His affect was congruent with dysthymia and anxiety, speech was appropriate, and insight and judgment appeared poor. Plaintiff was unsure if he wanted to engage in psychotherapy, "indicating that requesting the assessment was a way to fulfill his requirement for the Department of Social and Health Services [(DSHS)]." (AR 23, 352.) He did not present for further treatment. He established care with a primary care provider in December 2016 and was prescribed Paroxetine for generalized anxiety disorder (AR 23-24, 333), but there was no evidence of any other mental health treatment. The ALJ found the minimal treatment inconsistent with plaintiff's allegations of debilitating anxiety. Also, while plaintiff testified he suffers from post-traumatic stress disorder, there is no PTSD diagnosis from an

ORDER
PAGE - 5

acceptable medical source.

The ALJ also pointed to inconsistencies in plaintiff's reports of drug and alcohol use. In September 2016, plaintiff reported engaging in substance abuse treatment in 1995-1996, but denied any use since them. (AR 24, 354.) In October 2015, he reported using cannabis once in a while and denied any history of substance abuse treatment. (AR 24, 286.)

Plaintiff avers an absence of specific, clear, and convincing reasons. He observes "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). He notes substance use is not material to the decision. He contends the ALJ failed to take all circumstances into consideration, including his severe learning disorder and cognitive deficits compounded by panic and agoraphobia, and that this combination of factors accounted for his behavior with Dr. Valette. He also asserts an absence of evidence his panic disorder and agoraphobia were life-long and at their current severity level during his few years of substantial gainful activity.

The Court finds no error in the ALJ's consideration of plaintiff's symptom testimony. The ALJ properly considered inconsistencies between plaintiff's testimony as to the degree of his impairment and evidence in the record, 20 C.F.R. § 416.1529(c), including inconsistency with his reporting, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), activities, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), work history, *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992), and the medical evidence, *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). *See also Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's

testimony and his or her conduct, daily activities, and work record, among other factors.") The ALJ also appropriately considered evidence of plaintiff's failure to give adequate or consistent effort on examination, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) and *Thomas*, 278 F.3d at 959, and evidence associated with treatment, 20 C.F.R. § 416.929(c)(3), SSR 16-3p, including the minimal treatment received and his lack of follow through or interest in treatment, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ appropriately considers an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment), and *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) ("Although Molina provided reasons for resisting treatment, there was no medical evidence [her] resistance was attributable to her mental impairment rather than her own personal preference, and it was reasonable for the ALJ to conclude that the 'level or frequency of treatment [was] inconsistent with the level of complaints.'") (quoting SSR 96-7p).

Plaintiff takes a different view of at least some of the ALJ's reasons. However, the ALJ bears the responsibility for assessing a claimant's symptom testimony and for resolving conflicts in the record and ambiguities in the evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). *Accord Carmickle*, 533 F.3d at 1164; *Thomas*, 278 F.3d at 956-57. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ here rationally interpreted the evidence and provided substantial evidence support for his conclusion. (*See, e.g.*, AR 324 (while asserting an absence of evidence his panic and agoraphobia existed during the time when he worked, plaintiff reported in May 2016:

ORDER
PAGE - 7

"Anxiety/panic: 'I have had it my whole life. I can't explain it. All my life.'"))

## Medical Opinions

Plaintiff avers error in the rejection of medical opinions from Dr. Weiss and Dr. Aaron Burdge. In his October 2015 evaluation (AR 286-91), Dr. Weiss assessed severe limitations in relation to detailed instructions, ability to perform within a schedule, maintain attendance, and be punctual, completing a normal work day and week, and setting realistic goals and planning independently, and a marked limitation in the ability to perform routine tasks without special supervision. (AR 288, 369.) Dr. Burdge, in November 2015, reviewed and concurred with the evaluation of Dr. Weiss. (AR 292-94.) Dr. Weiss again evaluated plaintiff in September 2017 and offered the same assessment as in October 2015. (AR 357-61.)

The ALJ gave the assessments of Drs. Weiss and Burdge little weight. (AR 24-25.) He found the opinions primarily based on the 2015 WAIS-IV results and accepted the opinion of Dr. Peterson that the scores did not appear to be a valid measure of plaintiff's abilities given his work history, with significant earnings in several years, and his presentation in the subsequent psychological evaluation. The ALJ concluded the evidence did not support a diagnosis of intellectual disability, which appeared to be the primary basis for the limitations assessed by Dr. Weiss. (AR 24, 75.) He noted plaintiff worked in the past, obtained a driver's license, and functions independently. (AR 24.) While plaintiff has a learning disorder and anxiety, examination findings did not support the assessed limitations. On mental status examination (MSE) with Dr. Weiss in October 2015, plaintiff's affect was anxious, he had normal speech and Dr. Weiss based all other described symptoms and limitations on the WAIS-IV results. (AR 24-25, 370.) In the September 2017 MSE, plaintiff had some degree of impaired concentration, insight, and judgment, but his thought process, memory, fund of knowledge, and abstract thinking

fell within normal limits.  (AR 25, 361.)

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830.  Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining doctor opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ may provide germane reasons for rejecting opinions of "other sources," such as nurse practitioners. *Molina*, 674 F.3d at 1111.[3]

In this case, all other medical opinions in the record found either no limitations in functioning or insufficient evidence to allow for that evaluation.  In October 2015, Christina Ung, ARNP, conducted a physical evaluation, included only a diagnosis of anxiety, found no resulting interference with plaintiff's ability to perform basic work-related activities, and opined plaintiff could perform heavy work.  (AR 269-78.)  In March 2016, non-examining State agency psychologist Dr. John Gilbert found insufficient evidence to evaluate and noted the need for a CE. (AR 64.)  Dr. Valette conducted the CE in May 2016, but was unable to provide a specific functional assessment due to plaintiff's "conflicting information, vague and evasive responses, and lack of cooperation on . . . testing."  (AR 327.)  Dr. Valette diagnosed generalized anxiety disorder, gave a provisional diagnosis of learning disorder, and found plaintiff capable of handling funds, doing daily activities, and socializing.  (AR 25, 327.)  Subsequently, Dr. Peterson noted the

---

[3] New regulations, applicable to claims filed after March 27, 2017, include advanced practice registered nurses, audiologists, and physician assistants as "acceptable medical sources," other licensed heath care workers as "medical sources," and other sources of evidence as "nonmedical sources."  20 C.F.R. § 416.902.

ORDER
PAGE - 9

minimal information available, found inconsistency with plaintiff's prior earning capacity, and noted Dr. Weiss did not have any records at the time of his evaluation and provided no information regarding his approach to the WAIS-IV, including how often plaintiff did not complete items or "said I don't know." (AR 75.) Dr. Peterson further stated: "[T]he results of [Dr. Valette's CE] are questionable as well. On this round, the claimant was administered an MSE, the [Wechsler Memory Scale IV], and Trails A & B. All of the results were considered invalid based on the claimant's response or lack thereof." (AR 75.) He found insufficient evidence due to plaintiff's "behavior and failure to cooperate." (*Id.*) He also noted the absence of any indication plaintiff had followed up on Ung's recommendation to see a mental health counselor. (AR 75, 270-71, 276.)

In considering the opinions of Drs. Gilbert and Peterson, the ALJ stated: "While evidence is minimal, after consideration of the entire record, the undersigned finds that the claimant has mental impairments that result in work-related functional limitations." (AR 24.) The ALJ gave significant weight to Ung's opinion regarding heavy work and little weight to her finding of no interference in activities due to anxiety, as Ung "only conducted a physical exam and evidence supports some mental limitations from anxiety." (*Id.*) The ALJ afforded Dr. Valette's diagnoses great weight, finding his report generally consistent with a capacity for simple, routine, repetitive tasks, with limited social interaction. (AR 25.) He found the RFC supported by the assessments of Dr. Valette and ARNP Ung, and consistent with plaintiff's work history, minimal treatment, and MSEs.

Given the contradictory medical opinions, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions of Drs. Weiss and Burdge. Plaintiff contends the ALJ did not support his conclusion Dr. Weiss based his functional assessment primarily on the WAIS-

ORDER
PAGE - 10

IV results, noting he also administered a full psychological evaluation with MSE. Plaintiff asserts the alleged insufficiency of examination findings provided only a conclusion, not an explanation. He contends the ALJ improperly relied on his own interpretation of the medical evidence.

An ALJ properly considers the supportability of a medical opinion. 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.") *See also* 20 C.F.R. § 416.927(c)(6) (ALJ may consider any factor that tends to support or contradict the opinion of a physician). *Cf. Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (a physician's opinion may be discounted when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]") An ALJ also appropriately considers inconsistency with the record, *Tommasetti*, 533 F.3d at 1041, within and between doctor's reports, *Morgan*, 169 F.3d at 603, and with evidence of a claimant's level of activity, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ here reasonably found the testing results relied upon and intellectual disability diagnosis from Drs. Weiss and Burdge inconsistent with other evidence in the record, including plaintiff's prior earnings, his presentation on subsequent testing, his prior ability to work and obtain a driver's license, and his ability to function independently. Dr. Weiss's reliance on the WAIS-IV results is apparent from the plain language of his reports. (AR 289, 291, 358.) Also, rather than ignoring other aspects of the evaluation conducted by Dr. Weiss, the ALJ reasonably found examination findings in the record, including Dr. Weiss's MSE results in both 2015 and 2017, did not support this opinion evidence. Plaintiff, accordingly, fails to undermine either the reasons offered by the ALJ or the substantial evidence support for the conclusions reached.

/ / /

## Lay Testimony

The record contains lay statements from two of plaintiff's friends and from his mother. (AR 260-64.) Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen*, 80 F.3d at 1288-89.

Plaintiff's friend Sherry Sparkman reported plaintiff has trouble remembering day-to-day tasks, needs reminders for things such as laundry and appointments, "can be real closed off at times, gets very irritated and confused" when around "a lot of people talking or [too] many loud noises going at the same time", has highs and lows, a short attention span, and gets angry easily. (AR 261.) The ALJ found these allegations generally consistent with the medical evidence, but concluded that, while plaintiff has mental limitations, the difficulties described are accounted for in the RFC. (AR 25.)

Plaintiff's mother reported plaintiff's attendance in special education classes in school, his need for others to fill out paperwork, that he does not go to outside functions where there may be too many people, cannot sit still, and gets angry over little things. (AR 262-63.) The ALJ found these allegations generally consistent with the medical record, but the evidence not suggesting difficulties with simple, routine tasks and limited interaction. (AR 25.)

Finally, Gregory Stark reported plaintiff would have to take frequent unscheduled breaks, would likely miss a lot of work every month and suffer decompensation (emotional breakdown) at work, has problems getting along with people, would not be able to follow simple instructions, has severely impaired concentration and attention, is not able to hold a job, and has problems coping with society. (AR 264.) The ALJ gave these allegations little weight. Stark provided no

basis, other than problems with "work ethics", for his contention plaintiff would have to take unscheduled breaks and miss work. (AR 25, 264.) He provided no support for the conclusion as to decompensation and evidence did not support the alleged difficulty following simple instructions. Stark's statement was vague and lacked observations concerning plaintiff's difficulties with concentration or getting along with others.

Plaintiff denies the RFC accounts for the difficulties described by Sparkman, arguing difficulty remembering things like laundry and appointments reflects difficulty with simple and routine tasks. He argues the ALJ offered merely a conclusion, not an explanation for rejecting his mother's testimony and the testimony from Stark. He also asserts the ALJ misunderstood Stark's testimony as vague and lacking explanation, given that Stark identified plaintiff's limitations as resulting from emotional breakdowns, problems getting along with others, impaired concentration and attention, and problems coping with society.

In finding the difficulties described by Sparkman and plaintiff's mother generally consistent with the medical evidence, but the extent of plaintiff's limitations adequately accounted for in the RFC adopted, the ALJ implicitly rejected any greater degree of impairment attested to by these lay witnesses as inconsistent with the medical evidence. Such a finding serves as a germane reason for discounting lay testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ may reject lay testimony based on inconsistency with the medical evidence); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") The ALJ also provided germane reasons for assigning little weight to Stark's lay testimony. As the Commissioner observes, the value of lay testimony stems from the fact the lay witness is "in a position to observe a claimant's symptoms and daily activities[.]" *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). *See also Diedrich*

*v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017) (same); *Smolen*, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value[.]") Stark, rather than providing observations of symptoms, appeared to offer an assessment of plaintiff's work-related limitations. The ALJ reasonably discounted his lay testimony based on the absence of support provided for his conclusion plaintiff would decompensate on the job, inconsistency between the alleged difficulty following simple instructions and the evidence of record, and upon finding the lay statement vague and lacking observations.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 24th day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge